IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BENITA J. BROWN, ET AL., | ) | CIVIL 17-00554 LEK-KSC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PORTER MCGUIRE KIAKONA & | ) | |
| CHOW, LLP, a Hawaii limited | ) | |
| liability partnership, as an | ) | |
| individual entity; THE | ) | |
| ASSOCIATION OF APARTMENT | ) | |
| OWNERS OF TERRAZZA/ | ) | |
| CORTBELLA/LAS/BRIAS/ | ) | |
| TIBURON, as an individual | ) | |
| entity and on behalf of all | ) | |
| others similarly situated; | ) | |
| DOE DEFENDANTS 1-100, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING MOTION TO DENY CLASS CERTIFICATION AND
JOINDER THEREIN AND DENYING MOTION FOR CLASS CERTIFICATION**

Before the Court are: 1) Defendant the Association of Apartment Owners of Terrazza/Cortebella/Las Brisas/Tiburon's ("Terrazza AOAO") Motion to Deny Class Certification ("Terrazza Motion"); [filed 1/22/18 (dkt. no. 33);] 2) Defendant Porter McGuire Kiakona & Chow, LLP's ("PMKC") joinder of simple agreement with the Terrazza Motion ("PMKC Joinder"); [filed 5/14/18 (dkt. no. 55);] and 3) Plaintiff Benita J. Brown's ("Brown") Motion for Class Certification ("Brown Motion"), [filed 8/14/18 (dkt. nos. 89 to 92)]. The Brown Motion came on for hearing on June 18, 2018, and the Court finds the Terrazza Motion and the PMKC Joinder suitable for disposition without a hearing

pursuant to Rule LR7.2(d) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). On September 21, 2018, this Court issued an entering order ruling on the motions and joinder, [dkt. no. 118,] which is superseded by the instant Order. For the reasons set forth below, the Terrazza Motion and the PMKC Joinder are granted and the Brown Motion is denied.

<u>**BACKGROUND**</u>

The operative pleading at this time is the May 18, 2018 Third Amended Class Action Complaint ("Third Amended Complaint").[1] [Dkt. no. 61.] Brown states she is a resident of North Carolina. In or around August 2004, Brown purchased Apartment No. 176 in the condominium project known as Las Brisas, Phase 15 in Ewa Beach ("the Unit" and "Las Brisas"). Las Brisas was managed by the Terrazza AOAO. Brown purchased the Unit for approximately $270,000, and obtained a $262,000 loan – secured by a mortgage on the Unit – to do so. [Third Amended Complaint at ¶ 8.] Between January 30, 2007 and February 8, 2007, the Terrazza AOAO recorded a lien against the Unit for $1,487.64 in

---

[1] Because the Terrazza Motion was filed before Brown filed the Third Amended Complaint, the motion addresses the Second Amended Class Action Complaint ("Second Amended Complaint"), filed December 11, 2017. [Dkt. no. 16.] Because the differences between the Second Amended Complaint and the Third Amended Complaint do not affect the class certification issues, this Court construes the Terrazza Motion as addressing the Third Amended Complaint.

unpaid assessments.  In order to collect its debt, the Terrazza

AOAO, through PMKC, initiated a nonjudicial foreclosure pursuant

to the former Haw. Rev. Stat. §§ 667-5 to 667-10 ("Chapter 667,

Part I") and conducted a public sale on May 20, 2011.[2]  The

Terrazza AOAO submitted the winning bid for the Unit and executed

a Quitclaim Deed in favor itself on June 9, 2011.  The Quitclaim

Deed was recorded on the same day.  The Terrazza AOAO therefore

obtained possession and control of the Unit, including all of the

benefits from it, while Brown remains liable for the amounts

secured by the mortgage.  [Id.]

        The Third Amended Complaint asserts the following

claims: a claim against all defendants (PMKC, the Terrazza AOAO,

and the proposed defendant class) for a declaratory judgment

that, during the relevant period, a homeowner association without

a mortgage containing a power of sale could not use Chapter 667,

Part I ("Count I"); a wrongful foreclosure claim against the

Terrazza AOAO and the proposed defendant class, based on the

improper use of Chapter 667, Part I ("Count II"); a Fair Debt

Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692(f), *et

seq.*, claim against all defendants ("Count III"); a Haw. Rev.

Stat. Chapter 480 unfair or deceptive acts or practices ("UDAP")

_____

        [2] All citations to Chapter 667, Part I refer to the version
in effect at the time of the foreclosure on Brown's Unit.
Sections 667-5, 667-5.7, 667-6, 667-7, and 667-8 were repealed in
2012.  2012 Haw. Sess. Laws Act 182, §§ 50-54, at 684.

claim against the Terrazza AOAO and the proposed defendant class ("Count IV"); and an improper foreclosure claim against the Terrazza AOAO and the proposed defendant class, based on the failure to obtain adequate prices for the properties in foreclosure ("Count V"). PMKC filed its answer to the Third Amended Complaint on June 4, 2018, and the Terrazza AOAO filed its answer on December 13, 2018. [Dkt. nos. 72, 121.]

The Brown Motion proposes the following class of plaintiffs ("Plaintiff Class"):

> All persons and legal entities who from August 10, 2010 to the present, owned real property in the State of Hawaii that was sold at public auction through a nonjudicial foreclosure pursuant to Hawaii Revised Statute § 667-5 . . . by one of the members of the AOAO Class that had employed the law firm Porter McGuire to complete the nonjudicial foreclosure . . . .

[Brown Motion at 1.] The proposed class of defendants ("AOAO Class") consists of:

> Association of Apartment Owners of Terrazza/Cortbella/Las Brisas/Tiburon, Association of Apartment Owners of Colony Marina, Association of Apartment Owners of the Esplanade, Association of Apartment Owners of Fairway Terrace, Association of Apartment Owners of Hale Moi, Association of Apartment Owners of Harbor Square, Association of Apartment Owners of Hawaiian Monarch, Association of Apartment Owners of Hillside Villa, Association of Apartment Owners of Ilikai Apartment Building, Association of Apartment Owners of Kahana Outrigger, Association of Apartment Owners of Kahului Ikena, Association of Apartment Owners of Kaiolu Sunrise, Association of Apartment Owners of Kalamaku`u, Association of Apartment Owners of Kauhale Makai, Association of Apartment Owners of Kihei Villages, Association of

4

Apartment Owners of Makaha Surfside, Association
of Apartments Owners of Makaha Valley Plantation,
Association of Apartment Owners of Makakilo
Cliffs, Association of Apartment Owners of
Makakilo Gardens, Association of Apartment Owners
of Nihilani at Princeville Resort,  Association of
Apartment Owners of Ocean Ridge at Makakilo,
Association of Apartment Owners of One Waterfront
Towers, Association of Apartment Owners of Pacific
Islander, Association of Apartment Owners of Palm
Court, Association of Apartment Owners of Pearl
Ridge Gardens and Pearl Ridge Tower, Puamana
Community Association, Puu Heleakala Community
Association, Association of Apartment Owers of
Ridgecrest-Melemanu Woodlands, Association of
Apartment Owners of Royal Palm at Waipio,
Association of Apartment Owners of Spruce Ridge
Villas, Association of Suncrest/The Shores/Lombard
Way/Avalon, Association of Apartment Owners of Sun
Rise, Inc., Association of Apartment Owners of
Terrazza, Association of Apartment Owners of the
Villas of Kahana Ridge, Association of Apartment
Owners of Vista Waikoloa, Association of Apartment
Owners of Wailea Beach Villas, Association of
Owners of the Wailana at Waikiki, and Association
of Apartment Owners of Kona Sea Villa . . . .

[Id. at 1-2.]  Brown asserts both of the proposed classes satisfy

the requirements of Fed. R. Civ. P. 23(a) and (b)(3).  In the

alternative, she argues the proposed AOAO Class satisfies

Rule 23(b)(1).  Brown asks this Court to certify her as the

representative of the Plaintiff Class, and the Terrazza AOAO as

the representative of the AOAO Class.  Brown also moves to have

the following appointed as counsel for the Plaintiff Class:

Steven Chung, Esq., of Imanaka Asato, LLLC; Timothy Blood, Esq.,

of Blood Hurst & O'Reardon, LLP; and Timothy Cohelan, Esq., of

Cohelan Khoury & Singer.  Further, Brown seeks the appointment of

the Terrazza AOAO's counsel as counsel for the AOAO Class.

In contrast, the Terrazza Motion argues this action should remain limited to the existing parties. Brown does not have a claim against 37 of the 38 members of the proposed AOAO Class, and 101 members of the proposed Plaintiff Class do not have claims against the Terrazza AOAO. The Terrazza AOAO acknowledges it foreclosed upon the condominium units of sixteen members of the proposed Plaintiff Class, but it argues that is insufficient to support a class action. The Terrazza AOAO urges this Court to deny certification of both the proposed Plaintiff Class and the proposed AOAO Class.

## STANDARD

Fed. R. Civ. P. 23 states, in pertinent part:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:

(A)  inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B)  adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

. . . .

(3)  the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:

(A)  the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)  the likely difficulties in managing a class action.

The Rule 23(a) requirement are known as: "(1) numerosity;

(2) commonality; (3) typicality; and (4) adequacy of

representation."  <u>Parsons v. Ryan</u>, 754 F.3d 657, 674 (9th Cir.

2014) (footnote omitted).

"Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." Id. (some citations and internal quotation marks omitted) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011)). The Ninth Circuit has stated:

> In evaluating whether a party has met the requirements of Rule 23, we recognize that "Rule 23 does not set forth a mere pleading standard." Wal-Mart, [564 U.S. at 350,] 131 S. Ct. at 2551. We therefore require a party seeking class certification to "affirmatively demonstrate his compliance with the Rule — that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Id. Similarly a party must affirmatively prove that he complies with one of the three subsections of Rule 23(b). Id.

Id.

## DISCUSSION

The Court first turns to the issue of whether certification of the proposed AOAO Class is appropriate.

## I. Standing to Pursue Claims Against the AOAO Class

As a threshold matter, the Terrazza AOAO argues Brown does not have standing to pursue claims against the other members of the proposed AOAO Class.

> It is axiomatic that the judicial power conferred by Art. III may not be exercised unless the plaintiff shows "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the

8

> defendant." <u>Gladstone, Realtors v. Village of</u>
> <u>Bellwood</u>, 441 U.S. 91, 99 (1979).  It is not
> enough that the conduct of which the plaintiff
> complains will injure **someone**.  The complaining
> party must also show that he is within the class
> of persons who will be concretely affected.  Nor
> does a plaintiff who has been subject to injurious
> conduct of one kind possess by virtue of that
> injury the necessary stake in litigating conduct
> of another kind, although similar, to which he has
> not been subject.  <u>See</u> <u>Moose Lodge No. 107 v.</u>
> <u>Irvis</u>, 407 U.S. 163, 166-167 (1972).

<u>Blum v. Yaretsky</u>, 457 U.S. 991, 999 (1982) (emphasis in

original).  This principle still applies when the case is brought

as a putative class action.  <u>Lewis v. Casey</u>, 518 U.S. 343, 357

(1996).  "[E]ven named plaintiffs who represent a class must

allege and show that they personally have been injured, not that

injury has been suffered by other, unidentified members of the

class to which they belong and which they purport to represent."

<u>Id.</u> (citations and internal quotation marks omitted); <u>see also</u>

<u>Hawkins v. Comparet-Cassani</u>, 251 F.3d 1230, 1238 (9th Cir. 2001)

("A named plaintiff cannot represent a class alleging

constitutional claims that the named plaintiff does not have

standing to raise." (citing <u>O'Shea v. Littleton</u>, 414 U.S. 488,

493-94, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974))).

In <u>La Mar v. H & B Novelty & Loan Co.</u>, the Ninth

Circuit recognized that a named plaintiff who did not have a

cause of action against a defendant did not have typical claims,

and could not be an adequate representative of a class that had

causes of action against that defendant, even if the named

9

plaintiff "suffered an identical injury at the hands of a party other than the defendant." 489 F.2d 461, 465-66 (9th Cir. 1973). The Ninth Circuit noted there were two exceptions to this rule: "situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury"; and "instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." Id. at 466. Brown asserts that both exceptions are present in this case, and these exceptions resolve the issue of standing, as well as the issues of typicality and adequacy. However, La Mar only addressed these exceptions in the context of the Rule 23(a) requirements of typicality and adequacy, having assumed the plaintiffs in the case had standing. Id. at 464 ("for the purposes of these appeals, we are prepared to assume the presence of standing").

    Since La Mar, the United States Supreme Court has rejected the Ninth Circuit practice of "'assuming' jurisdiction for the purpose of deciding the merits – the 'doctrine of hypothetical jurisdiction.'" Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (quoting United States v. Troescher, 99 F.3d 933, 934, n.1 (1996)). Further, the Ninth Circuit has recognized that the issue of standing must be resolved before class certification because standing is a

jurisdictional requirement.  <u>Lee v. Oregon</u>, 107 F.3d 1382, 1390

(9th Cir. 1997).  Thus, this Court must address the issue of

whether Brown has standing to pursue claims against the members

of the proposed AOAO Class before this Court can address whether

Brown has satisfied the Rule 23 requirements.  Because the Ninth

Circuit identified the <u>La Mar</u> exceptions in the context of the

typicality and adequacy requirements, this Court concludes that,

except where noted *infra*, the <u>La Mar</u> exceptions are inapplicable

in the standing analysis.  This Court therefore turns to the

analysis of Brown's claims under the well-settled standing

analysis.

   A.   <u>**Injury, Causation, and Redressability**</u>

        A suit brought by a plaintiff without
   Article III standing is not a "case or
   controversy," and an Article III federal court
   therefore lacks subject matter jurisdiction over
   the suit.   <u>Steel Co. v. Citizens for a Better
   Env't</u>, 523 U.S. 83, 102 (1998).  In order to
   establish standing, three requirements must be
   met:

        First and foremost, there must be alleged
        (and ultimately proved) an injury in fact – a
        harm suffered by the plaintiff that is
        concrete and actual or imminent, not
        conjectural or hypothetical.  Second, there
        must be causation – a fairly traceable
        connection between the plaintiff's injury and
        the complained-of conduct of the defendant.
        And third, there must be redressability – a
        likelihood that the requested relief will
        redress the alleged injury.  This triad of
        injury in fact, causation, and redressability
        constitutes the core of Article III's
        case-or-controversy requirement, and the
        party invoking federal jurisdiction bears the

burden of establishing its existence.

> Id. at 10[3]-04 (internal citations and quotation
> marks omitted).  See Takhar v. Kessler, 76 F.3d
> 995, 1000 (9th Cir. 1996) ("A plaintiff has the
> burden of establishing the elements required for
> standing.").

Iinuma v. Bank of Am., N.A., Civil No. 14-00295 DKW-KSC, 2014 WL
5361315, at *2 (D. Hawai`i Oct. 20, 2014).

It is undisputed that Brown's loss of the Unit in
foreclosure is a concrete injury.  For purposes of the instant
Motion, the Terrazza AOAO does not dispute: there is "a fairly
traceable connection between" Brown's injury and the Terrazza
AOAO's use of Chapter 667, Part I; and it is likely that Brown's
requested relief will redress her injury.  See Steel Co., 523
U.S. at 103.  However, as to the other members of the proposed
AOAO Class, Brown must show that there is a connection between
their conduct and the loss of her Unit.  As to this standing
requirement, the La Mar conspiracy exception is relevant.  In the
context of a conspiracy to commit a 42 U.S.C. § 1983 violation,
the Ninth Circuit has stated that a civil conspiracy "does not
enlarge the nature of the claims asserted by the plaintiff, as
there must always be an underlying constitutional violation."
Lacey v. Maricopa Cty., 693 F.3d 896, 935 (9th Cir. 2012) (en
banc).  However, a civil conspiracy can "enlarge the pool of
responsible defendants by demonstrating their causal connections
to the violation; the fact of the conspiracy may make a party

liable for the unconstitutional actions of the party with whom he has conspired." Id. Thus, a conspiracy among the members of the proposed AOAO Class may provide the necessary causal connection between Brown's injury and the conduct of the AOAOs other than the Terrazza AOAO.

> "'[T]he accepted definition of a conspiracy is a combination of two or more persons [or entities] by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means.'" Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc., 91 Hawai`i 224, 982 P.2d 853, 881 n.28 (Haw. 1999) (quoting Duplex Printing Press Co. v. Deering, 254 U.S. 443, 466, 41 S. Ct. 172, 65 L. Ed. 349 (1921)) (alteration in original).[3] The plaintiff must allege an underlying actionable claim because "there can be no civil claim based upon a conspiracy alone. . . ." Weinberg v. Mauch, 78 Hawai`i 40, 890 P.2d 277, 286 (1995); See [sic] Ellis v. Crockett, 51 Haw. 45, 451 P.2d 814, 822-23 (1969).

> "A conspiracy is constituted by an agreement . . . [.] No formal agreement between the parties is essential to the formation of the conspiracy, for the agreement may be shown if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." Marino v. United States, 91 F.2d 691, 694 (9th Cir. 1937);

> The existence of the joint assent of the parties need not be proved directly. Like

---

[3] Robert's Hawaii and Duplex Printing were superseded by statute on other grounds. See Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc., 113 Hawai`i 77, 105-06, 148 P.3d 1179, 1207-08 (2006) (Robert's Hawaii); Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n, 457 U.S. 702, 715 (1982) (Duplex Printing).

any other ultimate fact, it may be found as
an inference from facts proved.  It is enough
if the evidentiary facts and circumstances –
pieced together and considered as a whole –
convince the judicial mind that the parties
united in an understanding way to accomplish
the fraudulent scheme.

Kazuo Hashimoto v. Halm, NO. 2847, 1953 WL 7576,
at *5 (Haw. Terr. Nov. 20, 1953); State v.
Yoshida, 45 Haw. 50, 361 P.2d 1032, 1042 (1961)
("[t]he existence of a conspiracy may be inferred
from the circumstances.").

Hi-Tech Rockfall Constr., Inc. v. Cty. of Maui, No. CV 08-00081
DAE-LEK, 2009 WL 529096, at *16 (D. Hawai`i Feb. 26, 2009) (some
alterations in Hi-Tech Rockfall).

In support of her position that a juridical link
exists, Brown argues the members of the proposed AOAO Class all
participated in a scheme "devised and conducted" by PMKC to
collect unpaid condominium assessments by using Chapter 667,
Part I.  [Mem. in Supp. of Brown Motion at 20.]  Brown contends
the Affidavits of Non-Judicial Foreclosure under Power of Sale
("Foreclosure Affidavits") and the Quitclaim Deeds show that PMKC
"proceeded in the same manner for all" members of the proposed
AOAO Class when a delinquent homeowner did not respond to PMKC's
demands for payment: PMKC conducted a Chapter 667, Part I
nonjudicial foreclosure; the AOAO purchased the unit for a
negligible amount; and the AOAO rented the unit at a profit.
[Id. at 22 (some citations omitted) (citing Brown Motion, Decl.
of Timothy G. Blood in Supp. of Pltf.'s Motion for Class Cert.

("Blood Decl."), Exh. 3 (Terrazza AOAO's Foreclosure Affidavit for Brown's the Unit, recorded with the Office of the Assistant Registrar, Land Court, State of Hawai`i ("Land Court") on 6/8/11), Exh. 4 (Terrazza AOAO's Quitclaim Deed for Brown's Unit, recorded with the Land Court on 6/9/11), Exh. 5 (Foreclosure Affidavits for members of proposed Plaintiff Class), Exh. 6 (Quitclaim Deeds for members of proposed Plaintiff Class)).] However, Brown has not identified any evidence that the members of the proposed AOAO Class had a formal agreement, nor has she presented other evidence indicating they were working in concert.

The fact that all of the members of the proposed AOAO Class were represented by PMKC and agreed to and/or approved of PMKC's utilization of the Chapter 667, Part I nonjudicial foreclosure process is insufficient to support an inference of joint assent among the proposed AOAO Class. Brown also submits a letter from Milton Motooka, Esq., who represented the Terrazza AOAO prior to PMKC, that informed condominium associations about the risks of pursuing nonjudicial foreclosures. [Blood Decl., Exh. 24 (form letter dated 11/16/10).] Brown has not submitted evidence that Mr. Motooka represented any of the other members of the proposed AOAO Class, nor has she submitted any evidence that the Terrazza AOAO or any of the other members of the proposed AOAO Class received a letter from Mr. Motooka like Exhibit 24.

Moreover, even if every member of the proposed AOAO Class was
previously represented by Mr. Motooka and received a letter like
Exhibit 24, such evidence would not establish a conspiracy among
the proposed AOAO Class.  While each AOAO apparently agreed with
PMKC to utilize the Chapter 667, Part I foreclosure process,
there is no evidence of an agreement or other form of cooperation
between the AOAOs.  At most, the members of the proposed AOAO
Class may have known that PMKC was representing other AOAOs in
Chapter 667, Part I foreclosures.

> "[M]ere acquiescence or knowledge is insufficient
> to constitute a conspiracy, absent approval,
> cooperation, or agreement." Tour2000 Co. v.
> Koreana Tour Serv., Inc., No. 28209, 2009 WL
> 3437431, at *9 (Haw. App. Oct. 23, 2009) (mem.)
> (quoting Robert's Haw. Sch. Bus, Inc. v.
> Laupahoehoe Transp. Co., 91 Hawai`i 224, 260 n.44,
> 982 P.2d 853, 889 n.44 (1999)); see also Zimmerman
> v. Grolle, 38 Haw. 217, 226 (Haw. Terr. 1948)
> ("The mere knowledge, acquiescence, or approval of
> the act, without co-operation or agreement to
> co-operate, is not enough to constitute one a
> party to a conspiracy.  There must be intentional
> participation in the transaction with a view to
> the furtherance of the common design and
> purpose.") (footnote and citation omitted).

Goran Pleho, LLC v. Lacy, No. CAAP-12-0000025, 2016 WL 4082346,
at *19 (Haw. Ct. App. July 29, 2016), as amended on denial of
reconsideration (Aug. 26, 2016), cert. granted, 2017 WL 372113
(Hawai`i Jan. 26, 2017).  Brown has presented no direct evidence
of approval, cooperation, or agreement among the members of the
proposed AOAO Class regarding each association's Chapter 667,
Part I foreclosures, nor has Brown identified any evidence from

which such approval, cooperation, or agreement could be reasonably inferred. This Court therefore concludes that Brown has not established causation as to the other members of the proposed AOAO Class.

Similarly, because the other members of the proposed AOAO Class did not cause Brown's injury, the remedies Brown seeks against those members would not redress her injury. For example, no member of the proposed AOAO Class could be ordered to pay Brown compensatory damages because only the Terrazza AOAO's actions caused her injury, and the disgorgement of revenues that the other AOAOs gained from their Chapter 667, Part I foreclosures would not benefit Brown. See Third Amended Complaint at pgs. 23-24, Prayer for Relief ¶¶ C-D. This Court therefore concludes that Brown has not established redressability as to the other members of the proposed AOAO Class.

Because Brown has failed to establish causation and redressability as to the other members of the proposed AOAO Class, this Court concludes Brown does not have standing to pursue claims against them. Brown's request to certify the proposed AOAO Class can be denied on that basis alone. Further, because the proposed AOAO Class cannot be certified, there is no basis to certify the proposed Plaintiff Class because, except for the sixteen members whose units the Terrazza AOAO foreclosed upon, the members proposed of the proposed Plaintiff Class would

not have standing to pursue claims against the Terrazza AOAO.

However, for the sake of completeness, this Court will address most of Brown's other arguments.

**B.    Other _La Mar_ Exceptions**

If a juridical link can establish standing, Brown argues she has standing to pursue claims against the proposed AOAO Class because a juridical link exists between the Terrazza AOAO, PMKC, and the members of the proposed AOAO Class. According to Brown, PMKC devised a scheme utilizing Chapter 667, Part I that allowed it and all of the members of the proposed AOAO Class, including the Terrazza AOAO, to make "windfall gains" by buying condominium units at the nonjudicial foreclosure sales for minimal amounts which did not even satisfy the relatively small liens for the units' unpaid condominium assessments.  [Mem. in Supp. of Brown Motion at 1-2.]

La Mar describes the juridical link exception as applying where the defendants are "related in a manner that suggests a single resolution of the dispute would be expeditious."  489 F.2d at 466 & n.6 (citing Broughton v. Brewer, 298 F. Supp. 260 (N.D. Ala. W.D. 1969)).  However, the Ninth Circuit's subsequent discussion of the juridical link exception shows that it intended the exception to be limited to related governmental entities applying a common rule.  The Ninth Circuit stated:

In <u>Washington v. Lee</u>, 263 F. Supp. 327 (M.D. Ala.
N.D. 1966), the plaintiffs were, or had been
incarcerated in various detention facilities of
the State of Alabama, its counties, cities, and
towns.  Their suit was against the Commissioner of
Corrections, members of the Board of Corrections,
the Sheriff of Jefferson County and all other
sheriffs of Alabama, the Warden of the Birmingham
jail and all other wardens and jailers of city and
town jails in Alabama.  Its purpose was to obtain
a declaration of the rights of Negro citizens not
to be segregated while incarcerated.  Obviously
there were many facilities in which the plaintiffs
had not been detained even though their wardens or
jailers were named defendants.  Nonetheless, the
fact that the plaintiffs had been confined in
several of the facilities was deemed sufficient to
provide standing and to satisfy the requirements
of Rule 23.  Aside from the somewhat broad and
accommodating concept of standing in civil rights
cases, it is also true that **all the defendants
were officials of a single state and its
subordinate units of government**.  Their legal
relationship distinguishes them from the
defendants the plaintiffs La Mar and Kinsling seek
to envelop in their class action.  Moreover, **it
was just these juridical links that were used in
<u>Broughton v. Brewer</u>**, 298 F. Supp. 260 (N.D. Ala.
W.D. 1969), to fix the identity of those
defendants properly included in the plaintiff's
class action to declare Alabama's vagrancy laws
unconstitutional brought on behalf of 'all persons
whose poverty or lack of apparent means of
livelihood renders them susceptible to arrest
under' such laws.

The existence of similar links distinguishes
<u>Samuel et al. v. University of Pittsburgh et al.</u>,
56 F.R.D. 435 (W.D. Pa. 1972).  Despite the fact
that the representative plaintiffs attended only
the University of Pittsburgh, a class action
against those state universities which adhered to
the rule about which the representative plaintiffs
were complaining was sustained.  **A common rule
applied by instrumentalities of a single state**
presents a situation quite unlike that here before
us. . . .

<u>Id.</u> at 469-70 (emphases added) (footnotes omitted); <u>accord</u> <u>Easter</u>
<u>v. Am. W. Fin.</u>, 381 F.3d 948, 962 (9th Cir. 2004) (holding that
the defendants were not juridically linked because they were not
"related governmental entities, the other situation contemplated
by the <u>La Mar</u> court" (citing <u>La Mar</u>, 489 F.2d at 469-70)).  The
Ninth Circuit noted the district court that issued <u>Samuel</u>
subsequently relied on <u>Samuel</u> to certify a class action against
unrelated defendant banks that had a common practice.  <u>La Mar</u>,
489 F.2d at 470 (citing <u>Haas v. Pittsburgh Nat'l Bank</u>, 60 F.R.D.
604 (W.D. Pa. 1973)).  The Ninth Circuit expressly disagreed with
the extension in <u>Haas</u> of the juridical link found in <u>Washington</u>,
<u>Broughton</u>, and <u>Samuel</u> and stated the result in <u>Haas</u> was erroneous
and contrary to the holding in <u>La Mar</u>.  <u>Id.</u>

     Brown argues the cases cited in <u>La Mar</u> involving
government entities were merely examples, and the juridical link
exception is not limited to government entities, as evidenced by
decisions from other circuit courts.  <u>See, e.g.</u>, <u>Payton v. Cty.</u>
<u>of Kane</u>, 308 F.3d 673, 679 (7th Cir. 2002) ("Post-<u>La Mar</u> cases
from other courts have suggested that if all the defendants took
part in a similar scheme that was sustained either by a contract
or conspiracy, or was mandated by a uniform state rule, it is
appropriate to join as defendants even parties with whom the
named class representative did not have direct contact." (some
citations omitted) (citing <u>Moore v. Comfed Sav. Bank</u>, 908 F.2d

834, 838-39 (11th Cir. 1990); <u>Fallick v. Nationwide Mut. Ins.</u>
<u>Co.</u>, 162 F.3d 410, 423-24 (6th Cir. 1998))).  However, this Court
is bound by Ninth Circuit precedent, and the express language of
<u>La Mar</u> and the subsequent interpretation by the Ninth Circuit in
<u>Easter</u> control.  This Court therefore concludes that the <u>La Mar</u>
juridical link exception is limited to cases involving related
governmental entities applying a common rule.  Thus, the
exception is inapplicable under the facts of this case.

    The other <u>La Mar</u> exception is the situation where the
plaintiff's injury is "the result of a conspiracy or concerted
schemes between" the defendant who caused the plaintiff's injury
and the other defendants.  489 F.2d at 466 & n.5 (citing <u>Contract</u>
<u>Buyers League v. F. & F. Investment</u>, 300 F. Supp. 210 (N.D. Ill.
E.D. 1969)).  As discussed, *supra*, Brown has not established that
there was a conspiracy between PMKC, the Terrazza AOAO, and the
other members of the proposed AOAO Class.  It is not clear from
<u>La Mar</u> or <u>Easter</u> what a concerted scheme is and how it is
distinguishable from a conspiracy.  Black's Law Dictionary
defines a "concerted action" as: "An action that has been
planned, arranged, and agreed on by parties acting together to
further some scheme or cause, so that all involved are liable for
the actions of one another." (10th ed. 2014).  A reasonable
interpretation of the "concerted scheme" portion of the first
<u>La Mar</u> exception is a joint scheme that requires a level of

agreement among the participants, but which does not rise to the level of agreement required for a conspiracy. The members of the proposed AOAO Class all participated in the same foreclosure scheme. However, the evidence discussed *supra* as to the existence of a conspiracy also fails to establish the lesser level of agreement required to show a concerted scheme. Brown has not presented any evidence even suggesting the members of the proposed AOAO Class jointly planned, arranged, or reached any agreement regarding the foreclosure scheme. The "concerted scheme" portion of the first <u>La Mar</u> exception therefore does not apply to the facts of this case.

Thus, even if the establishment of one of the <u>La Mar</u> exceptions satisfied the standing requirement, this Court would still conclude that Brown does not have standing to pursue claims against the proposed AOAO Class. As previously noted, if the proposed AOAO Class cannot be certified, there is no basis to certify the proposed Plaintiff Class.

## II. <u>Rule 23 Requirements</u>

Even if this Court concluded Brown had standing to pursue claims against the proposed AOAO Class because of a juridical link, this Court would still deny certification because Brown cannot establish the Rule 23(a) requirements of commonality, typicality, and adequacy as to either the proposed AOAO Class or the proposed Plaintiff Class.

A.	**Numerosity**

Brown argues numerosity is met as to both proposed classes because the members of the proposed Plaintiff Class were subject to 107 foreclosures and there are 38 members of the proposed AOAO Class. [Mem. in Supp. of Brown Motion at 14 (some citations omitted) (citing Blood Decl., Exh. 3 (Brown Foreclosure Aff.), Exh. 4 (Brown Quitclaim Deed), Exh. 5, (Class Foreclosure Affs.), Exh. 6 (Class Quitclaim Deeds)).] This Court has stated:

> The numerosity inquiry "requires examination of the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co. of the Nw., Inc. v. E.E.O.C., 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980). Courts, however, have found the numerosity requirement to be satisfied when a class includes at least 40 members. See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (noting that "numerosity is presumed at a level of 40 members") (citation omitted); In re Nat'l W. Life Ins. Deferred Annuities Litig., 268 F.R.D. 652, 660 (S.D. Cal. 2010) (noting that "[c]ourts have found joinder impracticable in cases involving as few as forty class members") (citations omitted); E.E.O.C. v. Kovacevich "5" Farms, No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007) (noting that "[c]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members"); Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988) (noting that "[a]s a general rule, classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough").

Ah Chong v. McManaman, CIVIL NO. 13-00663 LEK-KSC, 2015 WL 13554008, at *4 (D. Hawai`i Aug. 17, 2015) (alterations in Ah Chong) (some citations omitted). The proposed Plaintiff Class

satisfies the numerosity requirement.  The number of proposed

AOAO Class members is very close to forty and, in light of the

fact that there are no absolute limits for the numerosity

requirement, see Gen. Tel., 446 U.S. at 330, this Court also

finds that the proposed AOAO Class satisfies the numerosity

requirement.

     **B.**    **Commonality and Typicality**

    This district court has stated:

> "Commonality exists where class members'
> situations share a common issue of law or fact,
> and are sufficiently parallel to insure a vigorous
> and full presentation of all claims for relief."
> Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d
> 1168, 1172 (9th Cir. 2010).  Typicality is
> satisfied where the representative parties' claims
> and class members' claims arise "from the same
> course of events, and each class member makes
> similar legal arguments to prove the defendant's
> liability."  Rodriguez v. Hayes, 591 F.3d 1105,
> 1124 (9th Cir. 2010); Fed. R. Civ. P. 23(a).  The
> Ninth Circuit has noted that the "commonality and
> typicality requirements of FRCP 23(a) tend to
> merge."  Meyer v. Portfolio Recovery Assocs., LLC,
> 707 F.3d 1036, 1041 (9th Cir. 2012).[4]

J.E. v. Wong, CIV. NO. 14-00399 HG-BMK, 2016 WL 1060834, at *2

(D. Hawai`i Mar. 17, 2016).

    All of the claims against the proposed AOAO Class

involve the issue of whether condominium associations could use

the Chapter 667, Part I nonjudicial foreclosure process.

---

[4] Meyer was abrogated on other grounds by Van Patten v.
Vertical Fitness Group, LLC, 847 F.3d 1037, 1044 n.3 (9th Cir.
2017).

However, that issue alone is not to satisfy the commonality and
typicality analysis. The analysis of the claims against the
proposed AOAO Class will require examination of the homeowners'
deeds and each AOAO's governing documents, such as the by-laws
and the declaration of condominium property regime. See, e.g.,
Galima v. Ass'n of Apartment Owners of Palm Court, CIVIL 16-00023
LEK-KSC, 2018 WL 6841818, at *8 (D. Hawai`i Dec. 31, 2018)
(considering the plaintiffs' deed and the AOAO's governing
documents in ruling on the parties' motions for summary judgment
in a case raising claims similar to Brown's). Further,
consideration of the claims by the proposed Plaintiff Class would
involve the unique factual circumstances of each foreclosure,
including the amount of the purchase price in the foreclosure
sale and other circumstances relevant to the reasonableness of
the sale process. See, e.g., Order Denying Motion to Dismiss
Count V of the Third Amended Complaint [Dkt 61], filed 11/29/18
(dkt. no. 120), at 7 (noting that the focus of Brown's Count V,
improper foreclosure claim is "the Terrazza AOAO's alleged breach
of its common law duty to conduct the nonjudicial foreclosure
sale in a fair and reasonable manner and its duty to exercise
reasonable diligence and good faith in attempting to obtain the
best price" (brackets, citation, and internal quotation marks

omitted)).[5]  For these reasons, Brown's claims do not have

sufficient commonality with the claims of the other members of

the proposed Plaintiff Class to satisfy Rule 23(a)(2), nor are

Brown's claims typical of the claims of the other members of the

proposed Plaintiff Class.  Similarly, commonality and typicality

are not present as to Brown's claims against the Terrazza AOAO

and the claims against the other members of the proposed AOAO

Class.

> ### C.  **Adequacy**

The Ninth Circuit has stated:

> "The adequacy [of representation] inquiry
> under Rule 23(a)(4) serves to uncover conflicts of
> interest between named parties and the class they
> seek to represent." Amchem [Prods., Inc. v.
> Windsor], 521 U.S. [591,] 625, 117 S. Ct. 2231
> [(1997)].  Serious conflicts of interest can
> impair adequate representation by the named
> plaintiffs, yet leave absent class members bound
> to the final judgment, thereby violating due
> process.  See Hanlon v. Chrysler Corp., 150 F.3d
> 1011, 1020 (9th Cir. 1998) (citing Hansberry v.
> Lee, 311 U.S. 32, 42-43, 61 S. Ct. 115, 85 L. Ed.
> 22 (1940)).

> The initial inquiry in assessing adequacy of
> representation, then, is whether "the named
> plaintiffs and their counsel have any conflicts of
> interest with other class members." Id. at 1020.
> That general standard must be broken down for
> specific application; conflicts within classes
> come in many guises.  For example, two subgroups
> may have differing, even adversarial, interests in
> the allocation of limited settlement funds.  See
> Amchem, 521 U.S. at 626, 117 S. Ct. 2231.  Class

---

[5] The November 29, 2018 order is also available at 2018 WL
6251354.

members with higher-value claims may have
interests in protecting those claims from class
members with much weaker ones, see Ortiz v.
Fibreboard Corp., 527 U.S. 815, 857, 119 S. Ct.
2295, 144 L. Ed. 2d 715 (1999), or from being
compromised by a class representative with lesser
injuries who may settle more valuable claims
cheaply, see Molski v. Gleich, 318 F.3d 937, 955
(9th Cir. 2003), *overruled en banc on other
grounds by* Dukes v. Wal-Mart Stores, Inc., 603
F.3d 571 (9th Cir. 2010), *rev'd*, 564 U.S. 338, 131
S. Ct. 2541, 180 L. Ed. 2d 374 (2011). . . .

In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod.

Liab. Litig., 895 F.3d 597, 607-08 (9th Cir. 2018) (some

alterations in Volkswagen) (footnotes omitted).

Depending on various aspects of each foreclosure,

including, *inter alia*, the amount of the lien for unpaid

condominium assessments, the foreclosure sale price, and the

existence and amount of other encumbrances on the unit, the

interests of the individual members of the proposed Plaintiff

Class may vary greatly. Further, it appears that Brown and her

husband used the Unit as their primary residence at one point.

See Blood Decl., Exh. 14 (Brown's answer to the Terrazza AOAO's

First Request for Answers to Interrogs.) at CM/ECF pg. 7 (stating

Brown moved out of the Unit in January 2009, during her attempt

to sell the Unit after her husband's stroke). However, other

members of the proposed Plaintiff Class may never have used their

condominium unit as their primary residence. See, e.g., Connelly

v. Ekimoto & Morris, LLLC, CIVIL 16-00448 LEK-KSC, 2018 WL

3312957, at *3 (D. Hawai`i July 5, 2018) (dismissing the

plaintiffs' FDCPA claim because there were no factual allegations that would support a reasonable inference that the plaintiffs' unpaid condominium assessments were a debt for purposes of the FDCPA, but granting the plaintiffs leave to amend to address whether, and if so how long, their unit was ever their primary residence).[6] These differing interests have the potential to create serious conflicts of interest between Brown and the other members of the proposed Plaintiff Class. The same factors, as well as others, including unique provisions of the governing documents, create different levels of liability exposure for the individual members of the proposed AOAO Class, which have the potential to create serious conflicts of interest between the Terrazza AOAO and the other members of the proposed AOAO Class. This Court therefore concludes that Brown would not be an adequate representative of the proposed Plaintiff Class and the Terrazza AOAO would not be an adequate representative of the proposed AOAO Class.

---

[6] Brown's claims against the Terrazza AOAO and PMKC and Craig Connelly and Kristine Connelly's ("the Connellys") claims against the Association of Apartment Owners of Ko Olina Kai Golf Estates and Villas and Ekimoto & Morris, LLLC were originally filed together in one action. [CV 16-00448 LEK-RT, Class Action Complaint, filed 8/10/16 (dkt. no. 1).] The magistrate judge later severed Brown's claims from the Connellys' claims, [id., order, filed 11/3/17 (dkt. no. 106),] and Brown's claims were refiled in the instant case. The original filing of Brown's and the Connellys' claims in one class action shows that they believed themselves to be part of the same plaintiff class and illustrates that it is likely similar factual distinctions exist between Brown and the members of her proposed Plaintiff Class.

**D.** **Summary**

Even if Brown established standing, this Court would still conclude that neither the proposed Plaintiff Class nor the proposed AOAO Class can be certified because each fails to meet the commonality, typicality, and adequacy requirements.[7]  Because the proposed classes do not meet the Rule 23(a) requirements, it is not necessary to address the Rule 23(b) requirements.

## CONCLUSION

On the basis of the foregoing, the Terrazza AOAO's Motion to Deny Class Certification, filed January 22, 2018, and PMKC's joinder in the Terrazza Motion, filed May 14, 2018, are HEREBY GRANTED.  Brown's Motion for Class Certification, filed August 14, 2018, is HEREBY DENIED.

IT IS SO ORDERED.

---

[7] The analysis of the commonality, typicality, and adequacy factors would be different if this Court considered only the members of the proposed Plaintiff Class whose units were foreclosed upon by the Terrazza AOAO.  However, it is unnecessary to go through that analysis here because there are only sixteen such individuals, which is not sufficiently numerous to support a class action.

DATED AT HONOLULU, HAWAII, January 17, 2019.



 /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**BENITA J. BROWN, ET AL. VS. PORTER MCGUIRE KIAKONA & CHOW, LLP, ET AL; CIVIL 17-00554 LEK-KSC;** ORDER GRANTING MOTION TO DENY CLASS CERTIFICATION AND JOINDER THEREIN AND DENYING MOTION FOR CLASS CERTIFICATION